[Sac. No. 2641. In Bank.—October 19, 1917.]

In the Matter of the Estate of SARAH A. WATSON, an Incompetent Person. L. A. WATSON, Respondent, v. SARAH A. WATSON, Appellant.

GUARDIANSHIP — INCOMPETENT PERSON — EVIDENCE OF INCOMPETENCY INSUFFICIENT.—Where a widow aged seventy-eight, who had nine sons and daughters, and owned lands valued at fifty or sixty thousand dollars, suffered from some physical infirmities incident to advanced years but her clearness of mind was not shown to have been impaired in any substantial degree, the fact that she executed for an expressed condition of two hundred dollars a deed which was practically a gift of property valued at from four to six thousand dollars, to one of the sons, with whom she lived and who had been attending to her business affairs, and who had her full confidence, afforded no occasion for any inference of want of capacity on her part.

ID.—ADVANTAGE TO THE PROPERTY — OPINION OF TRIAL JUDGE.—The opinion of the trial judge that the property of the person whose competency was in question might be made more productive and that the contending claims of the children could be better harmonized by keeping her estate intact during her lifetime affords no justification for appointing a guardian.

Id.—Adult's Right to Control His Own Person and Affairs.—An adult person's right to control his own person and affairs should not be taken from him except upon a showing of the statutory ground warranting a restriction of his liberty of action for his own protection.

APPEAL from the Superior Court of Stanislaus County. W. H. Langdon, Judge.

The facts are stated in the opinion of the court.

Hawkins & Hawkins, for Appellant.

Griffin, Carlson & Boone, for Respondent.

SLOSS, J.—The superior court of Stanislaus County made an order adjudging Sarah A. Watson to be incompetent, and appointing a guardian of her estate. From this order the alleged incompetent appeals.

The principal contention of the appellant is that the evidence is insufficient to support the finding of incompetency. Our study of the record has satisfied us that there was no substantial testimony showing that Mrs. Watson's mental faculties were impaired to any such extent, if at all, as to justify the court in taking the management of her property out of her hands and subjecting it to the control of a guardian.

Mrs. Watson was a widow, seventy-eight years of age, the mother of six sons and three daughters. She was residing on a six acre tract of land near the city of Modesto. Here she lived with her son, Walter Watson, who was the owner of an adjoining parcel of three acres. Mrs. Watson owned a number of pieces of farming land in the states of North Dakota and Minnesota, of the aggregate value of fifty or sixty thousand dollars. Her husband had died some seven years before this proceeding was begun, and for some time after his death her daughter, Mrs. McLain, had lived with her. Mrs. McLain moved to her own home, and some time later Walter Watson brought his family from Minnesota to California, and took up his abode with his mother. This occurred about three years before the filing of the application for letters of guardianship. In October, 1916, Mrs. Watson conveyed to her son, Walter, for a considera-

tion of two hundred dollars, the six acre tract upon which he and she were living. The land was worth from four to six thousand dollars, and it is not pretended by anyone that the sum paid was regarded as an adequate consideration for a sale. Indeed, it is apparent that Mrs. Watson and her son did not view the transaction as a sale for a price in money alone. The evidence indicates that the grantor desired to give to her son, Walter, some inducement for remaining on the place, and that she expected to have a home there with him. She seems to have had the belief that some money consideration was necessary to the validity of a conveyance of real property. Except for the payment of the two hundred dollars, the transfer was really a gift, made in the expectation (though without any binding promise) that the donee would provide a home for his mother. The idea that Mrs. Watson was mentally incompetent does not seem to have occurred to anyone until she made the conveyance under discussion. The recording of the deed came to the attention of some of the grantee's brothers and sisters, and caused dissatisfaction and ill feeling, which speedily culminated in the institution of this proceeding.

The respondent relies in large part upon this transfer as evidence of incompetency. But we do not think it can fairly be given any such effect. The evidence was clear that Walter, ever since taking up his residence in California, had been attending to his mother's business affairs, and that he had her full confidence. There is no ground for even a suspicion that this confidence was not justified. It was admitted that he had always treated his mother with filial kindness. In view of the conditions, an absolute gift of this property, constituting about one-tenth, in value, of Mrs. Watson's holdings, would have afforded no occasion for surprise—still less, for any inference of want of capacity on the part of the donor. So far as the evidence shows, the conveyance was the product of her own free volition, and was not induced by any persuasion or pressure on the part of Walter. There was nothing in the evidence to warrant a conclusion that in transferring this land she was not acting rationally.

The remaining evidence relied on to show incompetency was exceedingly weak. Mrs. Watson herself was called as a witness and examined at considerable length. Her testi-

mony, read as a whole, shows that she had a clear and distinct knowledge of her property interests, and a very definite understanding of her relations to her children, and of their claims upon her. She was able to enumerate and describe her various property holdings and the income derived from each. Her total gross annual income was about one thousand seven hundred dollars. She was not, it is true, able to state just what the net income was, or to give in detail the expenditures required for taxes and other charges against the property. But, in view of the fact that these matters were, to a large extent, being attended to by her son Walter, no inference unfavorable to her mental capacity could fairly be drawn from this circumstance. Indeed, on the whole, it appears to us that her knowledge of her affairs was at least as extensive and accurate as that of the average person who has confided the management of his business interests to a trusted agent. She was suffering from some physical infirmities incident to her advanced years, such as deafness, rheumatism, and bronchitis. But there is nothing to show that the clearness of her mind had been impaired in any substantial degree. Much is made of the circumstance that she was unable to recall the provisions of a will which she had made at some time not disclosed by the evidence. But this is of trivial consequence when it is considered that at the time of the hearing her own testimony showed, as above stated, a very complete knowledge of what her property was, and what she was doing and desired to do with it.

One or two of her children testified that they thought she was not competent to look after her affairs. But this testimony was not supported by any good reason. It was founded principally upon the circumstance that she had made the conveyance to her son Walter.

From the remarks of the trial judge, incorporated in the record, it would appear that he thought that Mrs. Watson's property might be made more productive, and that the contending claims of the various children could be better harmonized by keeping her estate intact during her lifetime. But these purposes, however desirable in themselves, do not afford any justification for appointing a guardian. Mrs. Watson's children had no vested right to an equal division of her estate. She was the owner of the property. It was her right to manage it as she pleased, either personally or

through agents of her choice, and to dispose of it as she saw fit, unless her mental faculties were impaired to such an extent as to make her unable to properly manage and take care of it or to render her liable to imposition by "artful or designing persons." The appointment of guardians for insane and incompetent persons is authorized by section 1763 et seq. of the Code of Civil Procedure. The proper construction of these sections was discussed at some length in *Matter of Coburn*, 165 Cal. 202, [131 Pac. 352], and there is no occasion to repeat what we there said. We may, however, quote, as appropriate to the present case, this sentence from the opinion in *Estate of Schulmeyer*, 171 Cal. 340, [153 Pac. 233]: "Generally speaking, an adult person has the right to control his own person and affairs, and that right should not be taken from him, except upon a showing of the statutory grounds warranting a restriction of his liberty of action for his own protection." We have tried to demonstrate that, in the present case, the required showing was not made.

We have not forgotten that the weight of evidence is for the trial court, and that the finding made below is to be sustained on appeal wherever there is any evidence which, with the aid of legitimate inferences, may fairly be thought to support it. But we are satisfied that there is no such evidence here. The showing is manifestly weaker than that made in *Matter of Coburn, supra,* or *Estate of Schulmeyer, supra,* or, so far as we are advised, in any other case in which a finding of incompetency has been held to have support in the evidence.

The order is reversed.

Shaw, J., Victor E. Shaw, J., *pro tem.*, Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.