**GERLICH v. MYERS.** .(No. 11626.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 6, 1926. Rehearing Denied Dec. 11, 1926.)

**1. Deeds** ⊄⇒211(1)—**Evidence held not to establish that deceased's grantor was without sufficient mental capacity at time of executing deed.**

Evidence, in action seeking recovery of title and possession of real estate, *held* insufficient to sustain finding that deceased's gran-tor was without sufficient mental capacity to know and understand nature and consequence of act of signing and delivering deed.

**2. Specific performance** ⊄⇒86 — **Contract to convey property in consideration of care and support is enforceable.**

Contract by person of disposing mind to convey property in consideration of care and support is enforceable.

**3. Evidence** ⊄⇒63—**Insane persons** ⊄⇒2—**All persons presumed sane until contrary shown; persons charging insanity must prove it.**

All persons are presumed to be sane until contrary is shown, and person charging insanity has burden of showing such to be the fact.

**4. Deeds** ⊄⇒203—**Evidence that deceased offered deed to another for care and support held admissible on issue of state of mind.**

In suit to recover real estate, conveyed in consideration for care and support of deceased, evidence of witness, bearing same relation to deceased as grantee, that deceased had offered deed to him on same condition is admissible on issue of state of mind.

**5. Appeal and error** ⊄⇒1178(6) — **Court of Civil Appeals, on reversing judgment, will instruct trial court to treat issue theretofore established as conclusive (Rev. St. 1925, art. 2202, subd. 6; Court of Civil Appeals rule 62a).**

Under Rev. St. 1925, art. 2202, subd. 6, and Court of Civil Appeals rule 62a, providing for reversal and new trial only as to part affected by error, Court of Civil Appeals on reversing judgment will instruct trial court to treat issue established on former trial as conclusively established.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by Harry M. Myers, as executor of the estate of E. P. Lingenfelter, deceased, and another, against John E. Gerlich and another. Judgment for plaintiffs, and defendant named appeals. Reversed and remanded, with directions.

John L. Poulter, of Fort Worth, for appellant.

Harry M. Myers, of Fort Worth, for appellees.

CONNER, C. J. On March 12, 1925, Harry M. Myers, as executor of the estate of E. P.

Lingenfelter, deceased, joined by George P. Lingenfelter, as plaintiffs, instituted this suit in the Forty-Eighth district court of Tarrant county against John E. Gerlich and Claude Marlow, as defendants, seeking a partition and recovery of the title and possession of certain real estate situated in the city of Fort Worth, together with certain rents, and specially to cancel and set aside a certain warranty deed, executed by E. P. Lingenfelter in his life, conveying the property to the defendant John E. Gerlich.

The defendant Marlow, in answer, avers that he was familiar with the allegations and prayer of the petition, and that he does not wish to interpose or set up any defense or objection to the partitioning or sale of the property, but asks judgment for one-half of any and all amounts due from the rents collected.

The record discloses that there had been a former suit between the defendant Marlow and the plaintiff administrator, in which Marlow had been decreed an undivided one-half interest in the property in controversy, hence he prayed for judgment for one-half of the rents recoverable.

The defendant Gerlich answered by demurrers, a general denial, and specially that he was the fee-simple owner of the property described in the plaintiff's petition and entitled to its possession and all the fruits and revenues produced therefrom since the 1st day of June, 1923; that the reasonable annual rents amounted to $912; and that the plaintiff had received and collected and converted to his own use and benefit all of the rents, and had thereby become liable therefor, both individually and in the capacity of executor, etc.

The deceased, E. P. Lingenfelter, died on the 25th day of June, 1923, and it was admitted that he was the common source of title. The defendant Gerlich claimed title by virtue of a general warranty deed purporting to be executed by the deceased, E. P. Lingenfelter, on the 5th day of January, 1923. The plaintiff executor specially alleged, and in this it appears that the defendant Marlow joined, that this deed was a forgery and had never, in fact, been executed by the deceased, and, in the alternative, that if it had been so executed, that E. P. Lingenfelter was without sufficient mental capacity to understand the nature and effect of his act, and had been improperly and unduly influenced to execute the deed by the defendant Gerlich.

The case came on for trial on the 17th day of March, 1925, and, after the introduction of the evidence, was submitted to a jury upon two special issues, which, together with the answers of the jury thereto, are as follows:

"(1) Did E. P. Lingenfelter during his life, sign and deliver to the defendant John E. Ger-

---

lich the deed introduced in evidence before you, as claimed by said defendant Gerlich? Ans. Yes.

"(2) Did E. P. Lingenfelter, at the time of signing and delivering the deed introduced in evidence before you, if he did so, have sufficient mental capacity to know and understand the nature and consequence of his act in so signing and delivering said deed; that is, did the said E. P. Lingenfelter realize that, by executing and delivering said deed to defendant Gerlich, he was conveying to him the right of title and possession in and to the property described in said deed? Ans. No."

Upon the verdict so returned, the court rendered judgment in favor of the executor and of the defendant Marlow, awarding each an undivided one-half interest in the property described in the petition, and in the rents adjudged against the defendant Gerlich in the sum of $205. The judgment further canceled and set aside the said deed of the deceased to the defendant Gerlich, and from that judgment the defendant has duly prosecuted an appeal to this court.

No complaint of any character was made by either of the parties in the court below, or here, to the finding of the jury in answer to the first special issue submitted, to the effect that E. P. Lingenfelter, during his life, signed and delivered to the defendant John E. Gerlich the deed dated January 5, 1923, as claimed by defendant Gerlich. We therefore treat the fact so found as settled.

[1] The principal contention in the appellant's motion for new trial in the court below, and in this court, is that the evidence wholly fails to sustain the finding of the jury in answer to special issue No. 2. to the effect that the deceased was "without sufficient mental capacity to know and understand the nature and consequence of his act in so signing and delivering said deed."

We have very carefully considered the evidence in the case and have concluded that the contention stated must be sustained.

The plaintiff below introduced in evidence the deed which had been attacked and called the defendant Gerlich as a witness. Gerlich testified that the deed in question had been executed and delivered to him on the date it bore, to wit, the 5th day of January, 1923, by the deceased, in the office of Mr. Hughes, a justice of the peace. In this he was corroborated by Mr. Hughes and Mr. Koenig, an attorney who took the acknowledgment to the deed, and it nowhere seems to be disputed. At this time there was present Mr. Gerlich, the justice of the peace, a notary public, and the clerk of the justice court. No one of them testified to a want of mental capacity on the part of the deceased. It did apppear that at that time the deceased was sick. It seems that he was taken sick perhaps in the justice court room, while waiting for the defendant Gerlich to bring in the deed which had been prepared for his exe-

cution by Mr. Gerlich's attorney. The character of this sickness is not disclosed by the evidence, it being merely stated by the justice of the peace that he appeared to be "pretty sick." The notary public testified that the deed had been read to E. P. Lingenfelter, after which it had been duly signed and delivered. After this, the evidence indicates that the deceased was taken to his boarding house by his rental agent, a Mr. Woltz. Mr. Woltz was not interrogated as to Mr. Lingenfelter's mental condition at this time, nor as to the degree of Mr. Lingenfelter's physical disability. The boarding house keeper, a Mrs. M. E. Black, also testified. She related the arrival of Mr. Lingenfelter and Mr. Woltz, and said:

"On the 5th of January when he was brought out there by Mr. Woltz, he was weaker that day than he had ordinarily been, he didn't seem to be talkative. He was not cheerful. He knew what he wanted to eat and things like that; that was about all he said. He had not been in exactly that condition at any time before the 5th of January. On that day he just said he got sick at the courthouse and sent for Mr. Woltz to bring him home."

Dr. George F. Lingenfelter, a son of the deceased and one of the plaintiffs, testified, in substance, that he had been living in Denver, Colo., for many years; that his father had visited him in the summer and fall of 1922; that his eyesight then was not good; that his father never told him that he had deeded this property to anybody; that he had never seen him write his name in that downward shape like it was on the deed; that he always wrote it rather on the level or slanting upward; that the deed was signed with a pen, when he usually used a pencil, and the position on the paper was not the usual position; that the writing was a little more irregular with the appearance that the hand was shaking and nervous; that he was a physician, and that he would say that his father was laboring under a mental and physical disability; that he did not think he was normal.

The defendant Gerlich testified to the effect that the deed had been made to him, in answer to the solicitation of E. P. Lingenfelter during his lifetime, in consideration that he, Gerlich, would take care of and see after him and see what he needed "as long as he lived, no matter how long it was, and when he died see that he was taken care of and buried."

The undisputed evidence shows that the deceased had lived in Tarrant county more than 20 years; that during the time he was boarding with Mrs. Black he went to the courthouse, almost daily; that his "bad sickness," which preceded his death, began about the 15th of January, 1923; that he was attended by a nurse and evidently had many acquaintances in the city in which he lived and, as before stated, no one of them, unless

it was Mrs. Black and Dr. Lingenfelter, was ever interrogated as to his mental condition. If, in fact, his mentality was of that degree which incapacitated him from understanding the nature and effect of his deed to Gerlich, it should have been more clearly developed. Certainly, after the long-continued residence of the deceased in the county, some of the witnesses would have been able to testify to the facts and circumstances indicating the condition of his mind more clearly. A number of witnesses testified to the effect that they had known the defendant Gerlich and had had business dealings with him, and that his general reputation was that of being honest and fair in his dealings.

As opposed to the evidence indicated, the appellee mainly relies on the fact that the property deeded was worth $7,000, producing a rental of some $70 a month; that the deceased was 87 years old; that Gerlich, in fact, paid no actual money out in the care of the deceased; that on one occasion, after the execution of the deed, the deceased signed a check and delivered it to Gerlich to pay for certain repairs on the property; that Gerlich did not place his deed upon record until the death of E. P. Lingenfelter; that he refused to bring to the office of the executor the deed for examination, and perhaps other circumstances of like nature. But the evidence further tends to show that Mr. Gerlich exhibited the deed soon after its execution to Mr. Woltz, and perhaps told others of it; that Mr. Woltz was the rental agent of the deceased and Gerlich told him to continue to collect the rents; that Gerlich obligated himself for the expenses of the sickness and the burial of the deceased, and its payment was by Mr. Woltz out of the funds in his hands; that he consented to the administration proceedings, knowing that he would be sued for a recovery of the property, and that after the execution of the deed he did plumbing work on the property without charging the deceased therefor.

[2] It is not to be doubted, we think, that a contract by a person of disposing mind to convey property in consideration of care and support, such as testified to without contradiction by the appellant Gerlich, is enforceable. In Jordan v. Abney, 97 Tex. 296, 78 S. W. 486, it was held:

"That a contract between two persons upon valuable consideration, that one will, at his death, leave property to the other, is enforceable, where no statute is contravened, is held by an almost unbroken current of authority, English and American. Such contracts when sufficiently certain have been held valid and enforceable, in equity as well as at law, whether they provide for the payment of money, or the leaving of specific property, or of all or a moiety of that which the obligor should leave at his death. They have usually been put in the form of agreements to bequeath by will, but this has not been regarded as an essential feature; agreements to leave the property, or that the obligee should have it, at the death of the obligor, being held sufficient."

See, also, Mitchell v. Inman (Tex. Civ. App.) 156 S. W. 290, writ refused; Hancock v. Haile (Tex. Civ. App.) 171 S. W. 1053; Masterson v. Harris, 107 Tex. 73, 174 S. W. 570; Ryan v. Lofton (Tex. Civ. App.) 190 S. W. 752.

In the case of In re Carmichael, 36 Ala. 514, the following was said:

"That a person makes an improvident bargain, or many improvident bargains; that he is generally unthrifty in his business, or unsuccessful in one or many enterprises, does not, per se, prove him to be non compos mentis. These may coexist with a mind perfectly and legally sound. 1 Beck's Med. Jur. 745. Such testimony is certainly admissible, in connection with facts and circumstances tending to show mental aberration."

Hawley v. Griffin, 82 N. W. 905, by the Supreme Court of Iowa, it was held, in substance, that evidence that a person was in the habit of preserving worthless papers, and at his death left a large accumulation of papers, only some of which, however, were shown to be worthless, and that he asked persons for papers in which he had no interest, but under circumstances which indicated that he believed they would be valuable to him, is not indicative of insanity. Nor was evidence that a person was abusive and quarrelsome, and that he quarreled with members of his family, alone, proof of insanity, where it does not appear that he was ever the aggressor, or that he ever injured any member of his family. Nor that a person's face showed a wild expresssion, and that his eyes glared when he was engaged in a quarrel, are not indicative of insanity, where it is shown that he was a man of a passionate and impulsive disposition.

In Bobell v. Wagenaar, 106 Or. 232, 210 P. 711, by the Supreme Court of Oregon, it was held, in an action for money judgments, in substance, that the fact that the defendant, in his reply, alleged that he was insane at the time of service of summons upon him, and the evidence tended to show that he was drinking heavily and neglected his business, was insufficient to establish his insanity.

Watson v. Watson, 176 Cal. 342, 168 P. 341, by the Supreme Court of California, was one in which a woman 78 years old, having nine children and suffering from some physical infirmity incident to her advanced age, conveyed land constituting about one-tenth in value of her property to a son living near her, and who had been attending to her affairs in expectation, but without any binding promise that he would provide a home for her. It was held that the conveyance, under the circumstances, was no evidence of incompetency requiring the appointment of a guardian.

In 32 Corpus Juris, page 727, it is said:

"The test of mental capacity to contract is whether the person possesses sufficient mind to understand, in a reasonable manner, the nature and effect of the act in which he is engaged; and in order to avoid a contract it must appear not only that the person was of unsound mind or insane when it was made, but that this unsoundness or insanity was of such a character that he had no reasonable perception or understanding of the nature and terms of the contract."

[3] Generally speaking, all persons are presumed to be sane until the contrary is shown, and the burden is upon the person who charges insanity to show the fact, and the court in the present case placed the burden upon the plaintiffs. As already appears in the course of this opinion, the jury found that the deceased, E. P. Lingenfelter, in fact executed and delivered to the appellant a deed in terms fully sufficient to convey the property in controversy. This finding has not been attacked or controverted by the appellees in this case by cross-assignment or otherwise; in fact, the evidence seems to establish this issue by the overwhelming weight of the testimony.

In the case of Missouri Pac. Ry. Co. v. Brazzil, 72 Tex. 233, 10 S. W. 403, our Supreme Court stated, among other things, that:

"When it is shown that an instrument was signed and delivered by the party whose contract it is made to evidence, in the absence of proof of some fact that will invalidate it the capacity of its maker to contract and all other facts necessary to the validity of the contract are sufficiently established to entitle the person claiming rights under the instrument to recover."

We are of opinion, therefore, that we should sustain appellant's assignment of error attacking the verdict of the jury in answer to the second issue submitted by the court, on the ground that the evidence is insufficient to sustain such finding.

[4] In view of the reversal of the judgment, we will notice another assignment of error presented by appellant. Upon the trial he introduced as a witness R. B. Davis, who testified that his wife and the wife of appellant Gerlich bore the same relation to the deceased and was on the same friendly terms with him as the witness John Gerlich. Upon appellant exhibiting to the witness a deed and asking him to "tell the jury whether or not Mr. Lingenfelter had proposed to deed this property to you prior to that," the witness would have answered "Yes." But the answer was excluded, on the ground urged in behalf of appellee that it was immaterial to any issue in the case. The ruling of the court has been duly preserved by bill of exception, and we think that, upon another trial, this testimony, if offered, will be competent on the issue of the state of mind of

290 S.W.—18

E. P. Lingenfelter. See Elliott on Contracts, vol. 1, p. 218, § 161; Williams v, Sapieha (Tex. Civ. App.) 62 S. W. 72; Tuttle v. Moody & Son (Tex. Civ. App.) 94 S. W. 134, and cases cited in volume 6, p. 1196, Digest of Texas reports. In Williams v. Sapieha, supra, it is said that where the issue is as to the mental competency of a vendor, his mental condition at any time prior or subsequent to the conveyance is admissible as bearing on his competency at the time of the conveyance. The case of Tuttle v. Moody & Son, cited above, was one in which the defendant had contracted to pasture plaintiffs' cattle, and plaintiffs sued for damages on account of the cattle having been insufficiently supplied with water. It was held to be proper to admit evidence as to the results obtained by plaintiffs in grazing cattle in another pasture, where it appeared that there was a similarity of condition between the two pastures. In the Digest referred to, it is said that:

"When the intent with which an act is done becomes material, it is competent to resort to other acts of the party whose conduct is brought in question in order to ascertain his real purpose in the case being considered; but such acts must be those of a similar kind, and so connected with the transaction under consideration in point of time as that they all may be regarded as parts of a system."

Numerous cases are cited in support of the test and we think the fact, if true, that the deceased, within a reasonable time prior to the execution of his deed to appellant, sought to make the same arrangement with the witness R. B. Davis, will be a circumstance tending to show fixity of idea and purpose on the part of the deceased and the condition of his mind as related to the subject in controversy.

[5] In view of a reversal, we think that we should further state that, in the view we have taken of the case, the verdict of the jury, to the effect that the deed in controversy was not a forgery, shall be accepted as established without necessity of further controversy on this issue. It is provided in article 2202, Rev. Civ. Statutes of 1925, subdivision 6, that a special verdict found under the provisions of the article "shall, as between the parties, be conclusive as to the facts found." Rule 62a, governing Courts of Civil Appeals, provides that, if it appear that the error affects a part only of the matter in controversy and the issues are severable, "the judgment shall only be reversed and a new trial ordered as to that part affected by such error."

As said in the case of Durham v. Scrivener, 270 S. W. 161, by Section A of our Commission of Appeals:

"After a fair and impartial trial has been had in the trial court on the issue involving the cancellation of the deeds, it would indeed be unfortunate if the rules of procedure governing appellate courts were such that, without any ap-

parent reason therefor, the trial court should again be required to determine this issue."

See, also, Nona Mills Co. v. Jackson (Tex. Civ. App.) 159 S. W. 932; Johnson v. Conger, (Tex. Civ. App.) 166 S. W. 405; Four Brotherhood Oil Co. v. Kelley (Tex. Civ. App.) 235 S. W. 604.

It is accordingly ordered that the judgment below be reversed and the cause remanded, with instructions to the trial court to treat the issue of forgery submitted by the trial court as conclusively established, submitting the cause only upon the issue of E. P. Lingenfelter's mental capacity to know and understand the nature and consequence of his act in signing and delivering the deed in controversy and upon the issue of undue influence, if the evidence shall raise that issue, and otherwise proceed in harmony with this opinion.