[S. F. No. 16152. In Bank.—December 18, 1939.]

In the Matter of the Guardianship of FANNIE ROLLINS WAITE, an Incompetent Person. CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO (a National Banking Association) et al., Respondents, v. FANNIE ROLLINS WAITE, Appellant.

Clarence E. Rust for Appellant.

James E. Colston and Richard C. O'Connor for Respondents.

GIBSON, J.—This is an appeal from a decree of the Superior Court of San Francisco, declaring Fannie Rollins Waite, incompetent, and granting letters of guardianship of her person and estate.

On August 15, 1938, Pearl Stewart, daughter of the alleged incompetent, filed a petition praying for the issuance of letters of guardianship of the person and estate of appellant, aged 78. At the hearing two doctors, appointed by the trial court, were called by the respondent and testi-

fied. Upon the conclusion of the doctors' evidence the court having been informed by counsel for respondent that there were eight lay witnesses in the matter, said: "I am prepared to make the order in this matter right now, and I am relying on the testimony of the doctors . . . I don't want to hear any lay witnesses."

Counsel for appellant requested permission of the court to call appellant as a witness. The court replied: "I don't want to hear from her." Counsel for appellant then called appellant to the stand and offered her to be sworn. The court said: "If you have any medical testimony I will be glad to hear it, but I don't want to hear from the lady. I don't know anything personally about her mental condition."

The court thereupon made the decree appointing Pearl Stewart, the daughter, guardian of the person, and Crocker First National Bank, guardian of the estate.

Appellant complains: (1) that the court erred in refusing to permit her to testify in her own behalf; and (2) that the evidence is not sufficient to justify the finding of incompetency.

On the evidence presented it was prejudicial error for the court to refuse to permit appellant to testify in her own behalf. The record clearly shows that she was of sound mind and qualified to testify under sections 1879 and 1880 of the Code of Civil Procedure. The only reason assigned by the court for refusing to permit her to testify was that it did not want to hear any evidence except medical testimony. Appellant's testimony could not be properly excluded upon the sole ground that she was a lay witness. (Code Civ. Proc., sec. 1870, subd. 1; see *Atkins Corp.* v. *Tourny,* 6 Cal. (2d) 206 [57 Pac. (2d) 480].)

This proceeding was commenced pursuant to section 1461 of the Probate Code, which provides that notice shall be given to the alleged insane or incompetent person of the time and place of hearing, and that such person, if able to attend, "must be produced at the hearing". As this court observed in *Matter of Coburn,* 165 Cal. 202, 217 [131 Pac. 352], such language "seems to contemplate an examination". The section has been amended since that decision, but the quoted language remains unchanged. Apart from the provisions of the statute applicable to this proceeding,

it is the general rule that the right of a party to testify in his own behalf is fundamental. (See *McClatchy* v. *Superior Court*, 119 Cal. 413 [51 Pac. 696, 39 L. R. A. 691] ; *Calder* v. *Levi*, 168 Md. 260 [177 Atl. 392, 97 A. L. R. 880] ; 49 Harv. L. Rev. 499.)

It is difficult to conceive of a situation in which a party has a greater right to, or need for, his own testimony than in the type of proceeding considered here. The right to control her own person and affairs was taken from appellant upon the testimony of two strangers whose conclusions were based upon acts and circumstances she was not permitted to explain or controvert, and she was denied the opportunity to show by testimony her capacity for rational thought and intelligent action.

The second ground of appeal relates to the sufficiency of evidence to prove incompetence. The testimony of the doctors, in so far as it was based upon their observation of appellant, was entirely favorable to her. They testified that she was in fine physical condition and was very well preserved for her age; that she was clear mentally and that her memory was very clear as to transactions occurring over a period of four or five years previous to the examination; that she knew the nature of the transactions in which she engaged, and understood the nature, status and title of her property; that she knew who her relatives were and gave intelligent answers to questions concerning them.

The doctors examined appellant separately. Each testified to certain facts related to them by appellant which they refer to in their testimony as her ''past history'', and each of the doctors gave these facts as the basis for his conclusion relative to appellant's competency. The facts so related are in substance as follows:

At the time of the hearing appellant was 78 years old. Her second husband had died about 3 years previously leaving her $31,000. At the age of 76 she married her third husband, aged 45. She lived with him about two months and the marriage and subsequent divorce cost her about $4,000. Appellant had always wanted to live on a ranch, and about one month before the hearing she purchased a ranch in Dublin Canyon, where she resided at the time of the hearing. She paid $8,000 for the ranch and stocked it with cattle for which she paid $850. She gave a one-half interest in the ranch and the income therefrom to a man under an arrange-

ment whereby the latter would take care of the cattle, do all the work on the ranch, and serve her as chauffeur. At the time of the hearing she was dissatisfied with the ranch and wanted to get rid of it.

One doctor testified that these facts showed ''a serious defect in judgment insofar as the handling of her affairs is concerned'', and stated that he thought she was liable to be imposed upon or deceived by artful or designing persons. The other doctor testified that ''considering her recent past history'' he believed ''that she is over credulous and has shown a lack of judgment'' and that her marriage to a man of 45 ''is a subnormality'' and shows ''intelligence defect''.

This testimony is inadequate to support the order. ▮ The *opinions* of the doctors as to her ''lack of judgment'' and ''intelligence defect'' are to be tested by a consideration of the facts from which those opinions are derived; and if those facts do not justify the conclusions, the opinions are arbitrary and without substantial value as evidence. ▮ There was no evidence that the price paid for the ranch was in excess of its real value, or that it was a bad investment. The fact that appellant may have been disappointed in her hope for happiness in her third marriage to a man much younger than herself could hardly be considered substantial evidence of incompetency. The arrangement which appellant made with a man to manage and care for her ranch and act as her chauffeur in return for the half interest in the ranch might indicate poor business judgment, but such conclusion does not necessarily follow. Moreover, there must be something more than poor business judgment to establish incompetency. As the court remarked in *Estate of Watson,* 176 Cal. 342, 345 [168 Pac. 341], speaking of the alleged incompetent: ''She was the owner of the property. It was her right to manage it as she pleased, either personally or through agents of her choice, and to dispose of it as she saw fit, unless her mental faculties were impaired to such an extent as to make her unable to properly manage and take care of it or to render her liable to imposition by 'artful or designing persons'.''

In our opinion the finding of incompetency is not supported by any substantial evidence.

The decree and order are reversed.

Shenk, J., Houser, J., Curtis, J., Edmonds, J., Carter, J., and Waste, C. J., concurred.