[Civ. No. 13527. First Dist., Div. One. Mar. 25, 1948.]

Guardianship of the Person and Estate of CORA STONE PETERSON, an Incompetent Person. CORA STONE PETERSON, Appellant, v. WELLS FARGO BANK & UNION TRUST Co. (a Corporation), as Guardian, etc., Respondent.

James M. Hanley for Appellant.

Harold C. Brown, Saul Perlis, Milton Marks and Morris Lowenthal for Respondent.

WARD, J.—Appellant seeks a reversal of an order appointing the Wells Fargo Bank & Union Trust Company, guardian

of the estate of Cora Stone Peterson, an incompetent person, upon the ground of the court's lack of jurisdiction and the ground of insufficient evidentiary support.

Appellant contends that the several requirements of section 1461 of the Probate Code must be strictly followed before jurisdiction to appoint a guardian is acquired. No authority so holding has been cited, and the decisions of the Supreme Court concerned with said section do not support appellant's contention. (*Buchanan* v. *Superior Court,* 209 Cal. 408 [287 P. 474]; *Guardianship of Waite,* 14 Cal.2d 727 [97 P.2d 238]; *Guardianship of Andrews,* 17 Cal.2d 500 [110 P.2d 399].)

The decisions relied on by appellant hold that the requirement of section 1763 of the Code of Civil Procedure, the basis of section 1461 of the Probate Code, that "the clerk of the said court must cause a notice to be given to the supposed insane or incompetent person of the time and place of hearing the case, not less than five days before the time so appointed" is jurisdictional. (*Snyder* v. *Superior Court,* 206 Cal. 346 [274 P. 337]; *Grinbaum* v. *Superior Court,* 192 Cal. 528 [221 P. 635].) A holding that a statutory requirement as to the giving of notice to an alleged incompetent is a prerequisite to the vesting of jurisdiction is not synonymous with a holding that the following requirements of section 1461 of the Probate Code are jurisdictional: (1) that the petition set forth "the names and residences, so far as they are known to the petitioner, of the relatives of the alleged insane or incompetent person within the second degree residing in this State"; (2) that "notice of the nature of the proceedings and of the time and place of the hearing shall be mailed . . . to each of such relatives"; (3) that a citation setting forth the time and place of hearing "shall be personally served on the alleged insane or incompetent person in the same manner as provided by law for service of summons at least five days before the time of hearing"; and (4) that "Such person, if able to attend, must be produced at the hearing, and if not able to attend by reason of physical inability, such inability must be evidenced by the affidavit and certificate of a duly licensed physician or surgeon, or other duly licensed medical practitioner . . . to the effect that such patient is unable to attend, shall be prima facie evidence of that fact."

On June 6, 1946, Bernal Burrows filed a petition for the appointment of himself as guardian of the person and estate of Cora Stone Peterson whom he alleged to be his aunt.

A copy of a citation to Cora Stone Peterson dated June 6, 1946, informing her to show cause on June 24, 1946, why she should not be adjudged an incompetent person and why Bernal Burrows should not be appointed guardian, was personally served upon Cora Stone Peterson on June 7, 1946. The answer of the alleged incompetent was filed June 22, 1946; compliance with Probate Code section 1461 was not questioned. From the foregoing it is apparent that the present proceeding is distinguishable from *Snyder* v. *Superior Court, supra,* and *Grinbaum* v. *Superior Court, supra;* here, jurisdiction was regularly obtained by the trial court.

The matter did not go immediately before the trial court. Additional pleadings were filed. According to statements made by counsel for respondent at the oral argument, continuances were duly had and the date of January 29, 1947, as the date for a hearing, was arrived at by stipulation. At the January 29, 1947 hearing, as at the hearings on February 6, 20 and 26, 1947, and March 13 and 21, 1947, the trial court retained jurisdiction and control of the proceedings. (*Halett* v. *Patrick,* 49 Cal. 590; *Guardianship of Lyle,* 77 Cal.App.2d 153 [174 P.2d 906].) The trial court's order may be amended by inserting the date "January 29, 1947," following the words "regularly to be heard on." (Code Civ. Proc., § 956a.) The fact that a second citation was served upon the alleged incompetent on January 31, 1947, may be regarded as surplusage.

That the requirements of Probate Code, section 1461 were not strictly followed in no way prejudiced appellant. Although it is true that at the time of the filing of the petition her sister was living in an adjoining apartment and hence constituted a relative "within the second degree residing in this state" whose name and residence should be set forth in the petition and who should receive notice of the proceedings, she died in December, 1946, prior to any of the hearings below. There is abundant evidence that Cora Stone Lewis is a niece and hence related merely in the third degree. (Prob. Code, § 253.) The requirement that the citation be personally served upon the incompetent was fully complied with by the service of June 7, 1946, referred to above. Lastly, as to the production of the alleged incompetent or of a medical certificate evidencing her physical inability, the record reveals that her counsel led both the court and opposing counsel to understand that "if it becomes necessary after you hear the testimony to have her here [counsel for the alleged incompetent]

will bring her here. . . . If she is able, she is coming into court here. . . . I will have a talk with Mrs. Peterson, and then I will determine whether I am going to bring her to court.''

The trial court found that ''Cora Stone Peterson is an incompetent person, and is by reason of old age and weakness of mind unable, unassisted, properly to manage and care for herself or her property.'' Support for this finding is seen in the following evidence: Two of appellant's childhood friends testified that when they saw her on January 28, 1947, she told them she was not living in her own home—although she had lived there about 30 years—but that she lived two blocks down the street, and that she still went to sales with her sister—although the latter had died about two months prior to this conversation. They concluded that she was irrational and of unsound mind. Both the petitioner, Bernal Burrows, and his wife, Gertrude Burrows, described in detail appellant's untidiness and filth in caring for herself and her apartment. Bernal Burrows described his aunt as having an insane mind, as eating with her hands, as turning on gas and forgetting to light it, and as failing to recognize people. Two independent doctors appointed by the court to examine appellant reported that she should definitely have a guardian because of her ''senile type of memory—a memory that is bad due to hardening of the arteries and senility; not just a slipping memory.''

Appellant called no witnesses. The only material conflict in the evidence appears from the testimony of a tenant and handyman of the incompetent that she talks intelligently, has good table manners, was a very good business woman, and comprehends things. ''Before we can disturb the findings of the lower court upon the ground that they are not supported by the evidence, we must be able to conclude as a matter of law that there is no evidence at all to support the conclusions arrived at by the trial court.'' (*Guardianship of McConnell*, 26 Cal.App.2d 102, 106 [78 P.2d 1043].) The trial court's findings must stand.

Through the testimony and records produced by an auditor with the Wells Fargo bank and the testimony of Cora Stone Lewis it was brought out that she was authorized to make withdrawals or deposits in joint account No. 82414 of the incompetent and her sister; that on December 21, 1945, she withdrew $2,000 from said account and on the same day

deposited $2,000 in her joint account with her mother, and that on September 23, 1945, the incompetent's property was transferred to Cora Stone Peterson and Cora Stone Lewis in joint tenancy. If such evidence was the sole evidence produced, there is authority that it would be insufficient to support an order finding appellant an incompetent person. (*Estate of Watson*, 176 Cal. 342 [168 P. 341]; *Guardianship of Waite*, 14 Cal.2d 727 [97 P.2d 238].) However, unlike the Watson case, it cannot here be said that appellant's own testimony showed "a very complete knowledge of what her property was, and what she was doing and desired to do with it." (*Estate of Watson, supra*, p. 345.) Appellant did not testify and there is ample evidence that she lacked such knowledge concerning her property. Furthermore, unlike the Waite case, the opinions of the doctors that appellant should have a guardian was derived from their observations concerning her memory of late events—from the date of her birth, in 1875, she was unable to compute her present age; she could not remember if she had paid her taxes. In the Waite case, the medical opinions as to "lack of judgment" and "intelligence defect" were based upon the alleged incompetent's poor business judgment and her third marriage to a man much younger than herself. In view of the doctors' additional testimony that the alleged incompetent was clear mentally; that she knew the nature of the transactions in which she engaged, and that she understood the nature and status of her property and also her relatives, it was held that the finding of incompetency was not supported by any substantial evidence. (*Guardianship of Waite, supra*, pp. 730-731.)

The order from which the present appeal is taken, is amended by the insertion of the date "January 29, 1947," following the words "regularly to be heard on," and, as amended, is affirmed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1948. Schauer, J., voted for a hearing.