[Civ. No. 19829. Second Dist., Dist. One. Jan. 25, 1954.]

Estate of DORA M. BALDRIDGE, an Incompetent Person. CLIFFORD A. BRIGGS, Respondent, v. DORA M. BALDRIDGE, Appellant.

Homer H. Gooing for Appellant.

Arthur E. Briggs for Respondent.

DRAPEAU, J.—The petitioner is a nephew of Dora M. Baldridge. He sought to have her declared incompetent and a guardian appointed for her person and estate.

After hearing the evidence, the trial court found that Mrs. Baldridge "is competent to manage her own person and her household affairs and expenses" and denied the petition for guardianship of her person.

The court also found that "Dora M. Baldridge is incompetent by reason of old age, physical illness and infirmity rendering her unable, unassisted, properly to manage and take care of her property, and by reason thereof is likely to be deceived or imposed upon by artful and designing persons," and granted the petition for guardianship of her estate. The Citizens National Trust and Savings Bank of Los Angeles was appointed such guardian, and letters of guardianship issued accordingly.

Mrs. Baldridge appeals from the order adjudging her incompetent and appointing a guardian of her estate.

It is contended that the adjudication of incompetency is contrary to the evidence and the law. This for the reason that to deprive appellant of the management and control of her own property on the basis of the evidence presented, amounts to a denial of due process.

In *Guardianship of Walters,* 37 Cal.2d 239, 245 [231 P.2d 473], the Supreme Court of this state held as follows:

"In considering appellant's contention that the evidence does not support the finding of incompetency, we must test the evidence in the light of Probate Code, section 1460, which provides: '. . . the phrase "incompetent person," "incompetent," or "mentally incompetent" shall be construed to mean or refer to any person, whether insane or not, who by reason of old age, disease, weakness of mind, or other cause, is unable, unassisted, properly to manage and take care of himself or his property, and by reason thereof is likely to be deceived or imposed upon by artful or designing persons.'

"All conflicts and any reasonable doubt as to the sufficiency of the evidence must be resolved in favor of the order. (See *Estate of Reed,* 198 Cal. 148, 151 [243 P. 674]; *Estate of Bristol,* 23 Cal.2d 221, 223-224 [143 P.2d 689].) In cases of this type, as in any other, we must uphold the findings of the trial court if there is any substantial evidence which, together with the aid of all inferences reasonably to be drawn from it, tends to support the judgment. (*Matter of Coburn,* 165 Cal. 202, 212-213 [131 P. 352]; *Estate of Reed, supra,* 198 Cal. at pp. 150-151; *Estate of Watson,* 176 Cal. 342, 346 [168 P. 341]; *Estate of Schulmeyer,* 171 Cal. 340,

342 [153 P. 233]; *Guardianship of McConnell*, 26 Cal.App.2d 102, 106-107 [78 P.2d 1043].)''

Mrs. Baldridge, the alleged incompetent, was about 80 years of age at the time of the hearing. Her only living child, a daughter, Jessie Baldridge, had died about two months before. Her husband died in December of 1948. He had been a successful businessman, the owner and operator of the Baldridge Packing Company. Upon his death, ownership of the packing plant vested in Mrs. Baldridge.

In March of 1951, the plant was sold for $265,000, of which $115,000 was paid in cash and the balance was secured by a first trust deed. This trust is being paid off to Mrs. Baldridge in monthly installments of $1,500 plus interest.

Mrs. Baldridge testified that the cash payment was deposited in Bank of America and that ''a hundred and some thousand'' dollars remain in the bank; that ''we have used part of it . . . to pay expenses.''

In August of 1951, Paul B. Sink and appellant's daughter Jessie formed a partnership for the operation of a café and cocktail lounge in Huntington Park. At that time Mr. Sink invested in the business $25,000 which he had borrowed from the Baldridge Packing Company upon his unsecured promissory note. Mr. Sink had been connected with the packing company since December 15, 1929. Prior to that date he had supervised the construction of the plant. After Mr. Baldridge died, Jessie Baldridge managed the plant and Mr. Sink acted as her assistant. Appellant testified that she had known Mr. Sink ever since she came to California and that he was like a son to her; that he had no interest in the packing plant at any time but was merely paid a salary, and that when the loan was made to him, she knew all about it.

Mr. Sink testified that while appellant and her daughter Jessie allowed him to voice his opinion regarding business matters, ''they didn't necessarily follow it by any means,'' and that his approval or disapproval had little effect upon them, ''because they had a mind of their own.''

Dr. Carmody, the Baldridge family physician for 10 years, testified that while appellant had hardening of the arteries and high blood pressure, she was in fair health for a woman of her years; that he thought her mental health was good. As to her capacity to handle business affairs, he ''wouldn't know how well any person could handle business affairs.''

The three women companions living with appellant, several neighbors, tradesmen, a banker and her dentist all testified

to the effect that she had an active interest in managing her home, had a will of her own; handled the money, paid the bills, worked in her garden; was very smart, very clever; very well-informed; that her mental acuity was very good; she had a keen mind and a clear eye. At the time the plant was sold, appellant "seemed to have her faculties very well established"; that there had been no perceptible change in her during the last four or five years as far as her mental status was concerned. "She seemed to have all her faculties . . . she's just as mentally alert as ever."

Opposed to this, petitioner Briggs testified that when he called on appellant shortly after her daughter's death, she was unable to recall whether he was her nephew or her deceased husband's nephew, and she told him her memory was very bad.

When interrogated, appellant recalled early events and persons; indicated that she was conversant with the packing business through discussions with her late husband; that she knew nothing about the corporation, except that she and her husband owned the entire business. She testified that she owned the house where she lived; that she had sold the packing plant and was receiving a monthly check from the sale. She produced one such check which she had just received. When the trial judge questioned her about this, appellant correctly defined principal and interest, and explained that as payments were applied to the principal, there was a corresponding reduction in the interest.

Other than the suggestion of poor memory, there was nothing in the testimony of the witnesses indicating that appellant was of unsound mind. The only medical testimony produced was that of her own doctor, who had attended her for 10 years and was of the opinion that her mental condition was good.

So far as the record discloses, appellant's one error of judgment was to lend $25,000 to Mr. Sink without security. However, it was held in *Guardianship of Waite,* 14 Cal.2d 727, 731 [97 P.2d 238]: ". . . there must be something more than poor business judgment to establish incompetency. As the court remarked in *Estate of Watson,* 176 Cal. 342, 345 [168 Pac. 341], speaking of the alleged incompetent: 'She was the owner of the property. It was her right to manage it as she pleased, either personally or through agents of her choice, and to dispose of it as she saw fit, unless her mental faculties were impaired to such an extent as to make her

unable to properly manage and take care of it or to render her liable to imposition by "artful or designing persons." ' "

In our opinion the finding of incompetency in the case here under consideration is not supported by any substantial evidence.

The decree adjudicating appellant to be incompetent and ordering appointment of a guardian of her estate is reversed.

White, P. J., and Doran, J., concurred.