GUARDIANSHIP OF FARR: FARR, Appellant, vs. SABY, Respondent.

*April 2—June 25, 1919.*

*Insanity: Incompetency: Evidence: Guardianship: How affected by adjudication in another county: Allowances.*

1. A man may be sane in the sense that it is not necessary to incarcerate him in an asylum, and yet be incompetent to manage his estate, even though he be not a spendthrift or a drunkard.
2. An adjudication that a person is sane at a given time is not conclusive, but has a probative effect only, upon the question whether he was sane twenty-three months thereafter.
3. Where in the county court of the county in which a person resided a guardian of his person and estate was appointed on the ground that he was incompetent, a subsequent adjudication that he is sane, made in another county, does not directly affect the status of or terminate such guardianship.
4. In determining the question whether a person is competent to manage his estate, the status of the estate at the time may properly be taken into account.
5. Allowances made in this case to the guardian of an incompetent and to his attorney, the services of both of whom were much increased by the ward's conduct and litigation, are *held* reasonable.

APPEAL from a judgment of the circuit court for Buffalo county: E. B. BELDEN, Judge.    *Affirmed.*

Proceedings begun by petition in the county court of Buffalo county January 30, 1917, for an accounting by defendant of his guardianship of the person and estate of plaintiff and for a removal of defendant as guardian and the appointment of another.    The defendant filed an account, and upon a hearing the county court approved it and denied plaintiff's application for removing the guardian.    Plaintiff appealed to the circuit court and there asked for an accounting and a termination of the guardianship.    In August, 1918, that court entered a judgment approving the guardian's account and refusing to terminate the guardianship, from which judgment plaintiff appealed to this court.

It appears that on March 4, 1916, plaintiff, theretofore a resident of Buffalo county, was duly committed to the state hospital for the insane at Mendota, where he was confined till June 22, 1916, when he was released on parole.    On April 11, 1916, the defendant, upon due proceedings had in the county court of Buffalo county, was appointed guardian of the person and estate of plaintiff and has since continued to act as such.    He has filed a petition showing that numerous claims exist against the estate; and an order limiting the time within which claims could be filed was made, a hearing has been had on numerous claims, and more than $10,000 in amount have been allowed.    In addition, mortgages amounting to about $13,000 are outstanding against the real estate, which has been inventoried at $29,000.    The personalty has been inventoried at $2,099.40, and the circuit court found that if plaintiff was allowed his homestead exemption it is doubtful if creditors can be paid in full.

When plaintiff was paroled from the asylum at Mendota he went to La Crosse county to live, and on July 11, 1916, he filed in the county court of that county a petition stating he was out on parole from the asylum, that defendant was his guardian, and asking for a judicial examination as to his

then mental condition.    Notice of such hearing was served
upon defendant, but he did not appear.    A hearing was had,
and on July 18, 1916, plaintiff was adjudged sane and re-
stored to his civil rights as fully as he possessed them before
he was adjudged insane.

*C. M. Hilliard* of Durand, attorney, and *F. E. Withrow* of
La Crosse, of counsel, for the appellant.

*Theodore Buehler* of Alma and *S. G. Gilman* of Mondovi,
for the respondent.

The following opinion was filed April 29, 1919:

VINJE, J.    The plaintiff contends that he gained a resi-
dence in La Crosse county after he was paroled from the
asylum, and that under the provisions of sec. 587, Stats.
1915, the county court of that county had jurisdiction to de-
termine his sanity.    He further contends that the adjudica-
tion of the county court of La Crosse county that he was
sane on July 18, 1916, when its judgment was entered, is
conclusive proof and *res judicata* of the issues in this case
as to his competency to manage his estate.    The defendant
denies the correctness of these contentions.    In our view of
the matter we do not find it necessary to decide the legal issue
raised by the first contention, because, assuming the validity
of the judgment of the county court of La Crosse county
establishing plaintiff's sanity on the 18th day of July, 1916,
it by no means follows that he was competent to manage his
estate in June, 1918, when the circuit judge made his find-
ings.    This is so for two reasons: First, because "sanity"
and "competency to manage an estate" are not synonymous
terms.    A man may be sane in the sense that it is not neces-
sary to incarcerate him in an asylum and yet be incompetent
to manage an estate, even though he be not a spendthrift
or a drunkard.    And second, because a condition of sanity
or competency to manage an estate is not a permanent, un-
changeable condition.    A man may be sane or competent at
one time, and be insane or incompetent at a future time.    Our

statute, sec. 587*c*, upon which plaintiff relies for a presumption of sanity after two years from a parole, recognizes this fact, for it provides that "Upon the expiration of two years from the time of granting such parole, . . . the presumption of insanity against such person . . . shall cease, and until *a new adjudication to the contrary*, he shall be presumed sane." This statute merely restores the presumption of sanity, which can be overcome by proof to the contrary just as in the first adjudication of insanity. In the absence of any adjudication to the contrary every person is presumed to be sane, and such presumption must be overcome by proof before an adjudication of insanity can lawfully be entered. That the statutory presumption is not conclusive is evidenced by the fact that it obtains only till a new adjudication to the contrary is made. And the statute recognizes the fact that a new adjudication can be made at any time.

When, therefore, plaintiff in June, 1918, asked the court to pass upon his then competency to manage his estate, the fact that he was sane twenty-three months prior thereto had but a probative effect upon the question at issue. It did not by any means determine it conclusively. So, too, the adjudication by any other competent court as to plaintiff's sanity could not directly affect the status of or terminate the guardianship matter in the county court of Buffalo county. That court in the first instance was the only one having jurisdiction of that matter, and this fact the plaintiff recognized when he filed his petition therein to be restored to the right to manage his estate.

The circuit court found that plaintiff was incompetent to manage his estate, and this finding is assailed as being contrary to the evidence. Plaintiff was a witness in the case and the trial court had an opportunity to observe and judge his mental capacity. Our opportunity to do so is much more limited, being confined to the printed page. In coming to the conclusion that plaintiff was incompetent the trial court properly took into account the status of the estate at that

time.   It was in process of settlement.   Many claims had been allowed, but none were paid.   Mortgages to the amount of $13,000 were outstanding.   It was the opinion of the trial court, and it so found, that it was for the best interest of the estate as well as the creditors that the guardian continue the administration of the estate.   The condition of the estate is referred to because it shows that it required considerable mental capacity to intelligently and efficiently manage such estate.   The court found that plaintiff lacked such capacity, and from the evidence we cannot say the court erred in so finding.

The court also found that the guardian had managed the estate "fairly and reasonably and without fraud, collusion, dishonesty, or waste."   This finding must also be held to be sustained by the evidence.   It would be profitless to the parties herein and to the legal profession to enter into a detailed discussion relating to plaintiff's alleged shortcomings of the guardian's management, and the evidence to the contrary.

The sum of $500 allowed the guardian in full for his services and the sum of $890 allowed his attorney must be deemed to be reasonable.   The services of both guardian and attorney were much increased by the ward's conduct and litigation.   By this statement no criticism is intended to be made of such conduct—only its result is reverted to for the purpose of showing a basis for the allowance.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on June 25, 1919.