### Guardianship of Reed.

*March 8—April 5, 1921.*

*Spendthrifts: Idleness and intemperance: Appointment of guardian by county court: Trial on appeal to circuit court: Evidence.*

1. On proceedings for the appointment of a guardian, it is *held* that if the testimony produced before the county court was similar to that given at the trial on appeal to the circuit court, showing that a farmer had been idle and intemperate for more than two years, had paid practically no attention to his property, had not cared for his live stock or paid the taxes on his farm, and had permitted the farm to grow up to weeds, the appointment of a guardian on the ground that he was a spendthrift would have been justified.

2. On appeal from the judgment of the county court the only question before the circuit court was the competency of the alleged spendthrift to care for and manage his property at the time of the hearing in the circuit court, regardless of his competency or incompetency at the time of the hearing in the county court.

3. Liberty of the person and the right to the control of one's own property are sacred rights which should not be taken away or withheld except for very urgent reasons.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Affirmed.*

Petition for appointment of a guardian. The matter was first heard in the county court and resulted in the appointment of a guardian. On appeal to the circuit court a new trial was had. The trial judge found that the appointment by the county court was justified at the time on the ground of the ward being an idler and spendthrift, but that owing to having mended his ways the necessity for guardianship had ceased. The judge found that there was not and had not been mental incompetency. Judgment was given revoking the appointment of the guardian and for his discharge. From this judgment the petitioners, children of the ward, appeal.

At the time of the trial respondent was sixty years of age. For a good many years he and his wife had lived on a small farm consisting of about fifty-one acres near Janesville, until the death of Mrs. Reed in February, 1914. Before her death the business management had for the most part been carried on by her. She took charge of the money, paying the family expenses and those of appellants. The family consisted of the father, mother, four sons, and two daughters. Respondent had not been very industrious, was intemperate, and spent considerable of his time in saloons. For some years most of the work on the farm had been done by the children.

Respondent bought the land about the time of his marriage in 1881, but four or five years afterward deeded it to his mother, and she to his wife. The latter had remained the owner until a short time before her death, when she conveyed the homestead forty acres to respondent and some other land to their son Thomas Frank Reed. On the administration of the estate of Mrs. Reed all of her real estate except the homestead was assigned to the children, subject to the life estate, and the personal property was assigned to the children. The land consisted of the homestead, about

eleven acres adjacent, and a house and lot in Janesville. The property was estimated to be of the value of about $20,000.

After the death of the mother respondent deeded the homestead to his son Frank. He claimed that the children importuned him to do this, making glowing promises, but that after the deed was made their conduct toward him wholly changed. This was denied by the children. After this deed respondent was anxious to have the land reconveyed, and what amounted practically to a life estate in all the land was thereupon conveyed to him. He desired and claimed a deed to the whole interest in the lands and held two contracts bearing on his right thereto, but was unable to get the deed from his son. Since this proceeding was commenced he has started an action to accomplish this end.

The father's differences with his children over these matters caused much hard feeling on his part toward them, and to this cause he attributed the condition which led to the appointment of the guardian. It is claimed by the respondent that this trouble and the death of his wife were the causes of his allowing the farm to lie practically unused and uncared for in the years 1915 and 1916.

At the time of the trial the respondent was working regularly as a teamster, was taking good care of his horses, had saved about $400 which was deposited in the bank, and had helped to arrange advantageous leases both of the farm and of the house and lot.

*F. C. Burpee* and *Charles E. Pierce,* both of Janesville, for the appellants.

For the respondent there was a brief by *Nolan & Dougherty* and *Jeffris, Mouat, Oestreich, Avery & Wood,* all of Janesville, and oral argument by *O. E. Oestreich* and *W. H. Dougherty.*

JONES, J. It is not necessary to enumerate in detail the causes which led to the petition for guardianship which was filed in February, 1917. For about two years after the

death of respondent's wife he had paid practically no attention to his property. The farm had grown up to weeds, the live stock had not been cared for, the taxes had not been paid. The management of the property could hardly have been worse. If a petition for guardianship had not been made it is quite possible that the entire estate would have been wasted. Respondent had not only been idle and intemperate, but in some of the business he undertook to transact had shown gross incapacity. If the testimony produced before the county court as to respondent's acts and mental condition during a period of two years or more was at all similar to that given at the trial in the circuit court, the appointment of the guardian was entirely justified.

Soon after the proceeding was commenced in the county court an arrangement was made between respondent and the petitioners by which respondent's brother was to take charge of the property during the pendency of the proceedings. The case was not tried in the county court until nearly two years after it was commenced, and the judgment which is appealed from was rendered June 4, 1920.

The only question before us is whether at that time respondent was competent to care for and manage the property, worth about $20,000. No claim was made that respondent was insane. It is argued by counsel for petitioners that it was not drunkenness nor idleness that made him incompetent to manage property, but "inherent defects."

Respondent may have been and probably was a spendthrift within the meaning of the statute when the guardian was appointed, but it by no means follows that he remained in that class up to the time of the trial in the circuit court. Although many witnesses were called on both sides who testified to facts and opinions bearing on the issue, the testimony for petitioners for the most part related to transactions which occurred several years before the trial, and their opinions were necessarily largely based on facts occurring during a period when respondent was clearly in such a state

of mind and under the influence of such habits that much of the time he was incapacitated to manage business affairs.

After hearing the testimony, including that of the respondent, which was given quite fully and with reasonable intelligence, the trial court came to the conclusion that there had been such a change in the habits and mental condition of respondent that a guardian was no longer necessary.

We appreciate the strong feeling of the children that the property which had been accumulated by the labor of the whole family ought to be preserved, and we are giving due consideration to that feeling. But it must also be borne in mind that liberty of the person and the right to the control of one's own property are very sacred rights which should not be taken away or withheld except for very urgent reasons. The trial judge had better opportunity than we to arrive at a just conclusion on the pure questions of fact in issue, and we do not feel justified in reversing the judgment. This decision is not to be interpreted as in any way approving the conduct of the respondent in the management of his property in 1915 and 1916, and if he should lapse into his former spendthrift habits it would be proper for his children to again make application for the appointment of a guardian.

*By the Court.*—Judgment affirmed.