GUARDIANSHIP OF LOKER: LOKER, Appellant, vs. OSHKOSH SAVINGS & TRUST COMPANY, Respondent.

*December 11, 1923—January 15, 1924.*

*Insane persons: Delusions as to wife's fidelity: Evidence: Sufficiency.*

Threats of one laboring under delusions as to his wife's fidelity and as to the parentage of his children to so dispose of his estate as to deprive his wife of any benefit from it, are strong evidence of and may be considered as affecting his legal competency to handle his estate; and in this case it is *held* that the incompetency of the petitioner is established by the clear preponderance and great weight of the evidence. p. 384.

APPEAL from an order of the county court of Winnebago county: A. H. Goss, Acting Judge. *Reversed.*

Guardianship. In July, 1921, the county court of Winnebago county duly appointed two physicians to examine James A. Loker as to his sanity. The physicians found that he was insane and recommended that he be committed to an insane hospital for treatment. He was taken to the Northern Hospital for the Insane as a voluntary patient and remained there until December 24, 1921. On the 14th of September, 1921, the *Oshkosh Savings & Trust Company* was appointed guardian of the estate of the said James A. Loker. On June 5, 1922, James A. Loker, incompetent, in his own behalf, filed a petition in the county court of Winnebago county alleging that his guardianship was no longer necessary; that he was mentally and otherwise capable of caring for his own affairs, praying for the discharge of his guardian and that his property be restored to him. The matter was set down for a hearing, notice thereof was given to his guardian, to his four children, and to his wife, *Nellie Loker*. The matter was tried before the court. The court found, in addition to the facts already stated:

"That the said James A. Loker is of the age of sixty-four years and was born in the town of Rushford, in said county of Winnebago, where he has lived and resided all his life and is by occupation a farmer; that with some assistance from his father, who was one of the pioneer farmers of Winnebago county, but mainly through his own efforts, he has reared a family of four children and is now possessed of property worth about $42,000, including a farm owned by him in said town of Rushford.

"That the said James A. Loker is now suffering from delusions, but that such delusions do not interfere with the proper management of his property. That he is in a good state of health for a man of his age and able to do considerable work. That since the appointment of the guardian he has assisted the guardian, at the guardian's request, in collecting interest and attending to matters of a like character in connection with his estate.

"That the said James A. Loker is entirely capable of taking care of himself and managing his property, and that such guardianship is no longer necessary."

And concluded as a matter of law that the guardian should be discharged.

An order was entered accordingly, and from that order the wife, *Nellie Loker,* appeals.

For the appellant the cause was submitted on the brief of *Wilbur E. Hurlbut* of Omro.

*F. C. Stewart,* attorney, and *John F. Kluwin,* of counsel, both of Oshkosh, for the respondent.

Rosenberry, J.   A careful consideration of the evidence in this case convinces us that the finding of the trial court is contrary to the clear preponderance and great weight of the evidence.   Four physicians testified and they all agreed that James A. Loker is insane; that his insanity takes the form of a delusion that his wife is unfaithful to him and that his children do not belong to him.   There is no hint in the record that these delusions have the slightest basis in fact.   His wife has lived with him for forty-two years, bore and reared his children, and aided him in all of his undertakings.   There is a dispute as to whether or not his insanity affects his capacity to transact business.   Dr. Adin Sherman, superintendent of the Northern Hospital for the Insane, testified that no person having a delusion can be looked upon as being responsible for his acts in matters relating to that delusion, and while he thought that the petitioner was competent to manage his own affairs, a perusal of his testimony indicates that he was not very firmly settled in that opinion.   A number of witnesses were called from the neighborhood.   Some of them thought that he was not capable of managing his affairs; others thought that he was capable.

The insanity of the petitioner is established beyond question.   The delusion under which he labors relates to those persons who are most concerned in the preservation of his

estate and for whom he should have naturally the greatest consideration. His threats to dispose of his estate in some way so that his wife shall derive no benefit therefrom indicate a course of conduct which so far departs from the normal as to establish the fact of his incompetency. A competent man might well decide for reasons satisfactory to himself to disinherit his wife as far as possible, but when this decision is based upon an insane delusion it is strong evidence of incompetency in the legal sense. Having in mind the rule laid down in *In re Deleglise*, 134 Wis. 41, 114 N. W. 130, and *Guardianship of Reed*, 173 Wis. 628, 182 N. W. 329, we are of the opinion that incompetency of the petitioner in this case is established by the clear preponderance and great weight of the evidence. It appears also that the delusions from which petitioner suffers have extended over a long period of time and are likely to increase in intensity rather than to diminish with the lapse of time.

*By the Court.*—The order appealed from is reversed, and cause remanded with directions to dismiss the petition.