In re Guardianship of Olson : Westerberg and another, Respondents, vs. Olson, Appellant.

*November 8—December 3, 1940.*

For the appellant there was a brief by *Magee & Swanson* of Ellsworth, and oral argument by *K. L. Swanson*.

*Thos. M. Casey* of Ellsworth, for the respondents.

Martin, J.    The sole question on this appeal is whether the evidence relative to the alleged mental incompetency of the appellant was such as to warrant the appointment of a

guardian of his person and estate. Mr. Olson, the alleged incompetent, was born in Sweden, June 9, 1864. He was seventy-five years of age at the time of the hearing below. He came to this country when five years of age with his parents, and became naturalized in Pierce county where he has since resided. His parents, brothers, and sisters are all deceased. He never married and has no one dependent upon him. The evidence discloses that he is in good health for a man of his age, and he has no physical deformities. He owns a farm consisting of sixty acres, the value of which appears to be uncertain, but it is less than $4,000. There are a few items of personal property on the farm, such as old farm machinery, but they are of little value. He has approximately $3,500 in certificates of deposit in the bank of Maiden Rock. In recent years he has rented his farm on shares, he receiving one-third share of the crops. It appears that he has managed all of his own affairs, selected the renter on his farm, collected his share of the crops, sold same, and collected the proceeds. He makes withdrawals from the bank as they are needed for the payment of his living expenses. All of his property has been acquired through his own efforts. He lived on his farm and operated same until about a year prior to the application for the appointment of a guardian, except during the winter months, during which he lived with the family at whose home he is now staying. While he lived by himself at home on the farm, he did his weekly shopping. While he stayed at the home of Mrs. Sjostrom during the winter months, he paid her at the rate of $16 a month for his board and lodging. During the last two years, while living there all the time, he has been paying her $25 a month for his room and board. As the monthly payments accrue, he goes to the bank, usually accompanied by Mrs. Sjostrom, and withdraws the necessary amount to pay her.

The witnesses who saw him most frequently testified that in their opinion he was not in need of a guardian either of his person or estate. The only witness who testified that he was mentally incompetent was his niece who petitioned the county court for the appointment of a guardian.

During the progress of the hearing, the court stated that the testimony showed that the property of the alleged incompetent was not complicated; that the only matters to look after were the income from the farm, the collection of interest from the money in the bank, and the transactions with reference to selling his share of the crops and making payments to Mrs. Sjostrom for his room and board. The court stated:

"The court believes that his affairs at this time are all right, and that nobody has taken any advantage of him, and all relations with him have been fair and honest. There is no testimony to indicate the contrary. The court has observed Mr. Olson as he appears here, and as he testified and has listened to the testimony. It is apparent he is seventy-five years old—advanced age. There is no question in my mind but what his physical and mental condition is not what it was, and that it is to some extent at least becoming—he's becoming less physically and mentally able to look after his affairs. Doesn't it appear from the testimony here that he should have someone, not only look after his rather modest property matters, but his personal care also? While he is in an apparently —in a good home, and everything is all right, wouldn't it be for his best interests to have somebody whose business it is to see that he is going to be looked after personally, and look after his property? If that isn't done now, won't it have to be done sometime in the near future? Probably."

While it is true that the alleged incompetent showed some deficiency in memory as to the number of brothers and sisters he had, he knew that none of them were living. He knew that some of his nephews and nieces were dead, but apparently was not able to answer forthwith as to the number. In other respects his memory seems to be all right.

In the appointment of a guardian of a person's estate, the court should take into account the status of the estate, whether it is of such nature that its management requires considerable care and judgment. See *Guardianship of Farr,* 169 Wis. 451, 171 N. W. 951. In *Guardianship of Warner,* 232 Wis. 467, 287 N. W. 803, the court, in reversing an order of the county court of Richland county appointing a guardian of the person and estate of the alleged incompetent, quoting from *In re Guardianship of Welch,* 108 Wis. 387, 84 N. W. 550, said at page 473:

"Only with great hesitation should courts, by the appointment of a guardian, interfere with the discretion of elderly people, owing no legal duty of support to anyone, in devoting the property accumulated by them to their comfort according to their own tastes."

In *Guardianship of Reed,* 173 Wis. 628, 632, 182 N. W. 329, it is said:

"But it must also be borne in mind that liberty of the person and the right to the control of one's own property are very sacred rights which should not be taken away or withheld except for very urgent reasons."

Old age is usually accompanied by some physical and mental infirmities. However, sec. 319.01 (3) (b), Stats., provides as to what persons should be subject to guardianship as follows:

"Persons who are insane, idiotic, or feeble-minded, or who by reason of age *or other cause are mentally incompetent to care for themselves or their property.*"

The proof must show that the alleged incompetent is incapable of taking care of himself and managing his property. The mental incompetency must exist at the time of the hearing or else the petition should be denied. To establish mental incompetency in will cases, the proof must be clear, convincing, and satisfactory. *Will of Grosse,* 208 Wis. 473, 476, 243 N. W. 465. The degree of proof should be no

less, to warrant the appointment of a guardian of the person and estate of an alleged incompetent.

In the instant case, we must hold that the evidence fails to establish that Mr. Olson was incompetent to care for himself and his property.

*By the Court.*—Order reversed, and cause remanded with directions that an order be entered vacating and setting aside the order of November 10, 1939, appointing a guardian of the person and estate of appellant.