[File No. 6841.]

## IN THE MATTER OF THE GUARDIANSHIP OF ANNA THORESON, an Incompetent Person.

## ESTHER SCHWARZ and Arnold Thoreson, Respondents, v. ANNA THORESON, Appellant.

(4 NW(2d) 822.)

Opinion filed July 1, 1942.   Rehearing denied August 4, 1942.

*J. E. Hendrickson* and *Leigh J. Monson,* for appellant.

*Clifford Schneller,* for respondents.

CHRISTIANSON, J.   This controversy originated in the county court of Richland county and involves the appointment of a guardian for one Anna Thoreson.   A son and a daughter of the respondent Anna Thoreson filed a petition alleging that the respondent is a resident of Richland

county and the owner of certain real and personal property situated in that county; that she is eighty-one years of age, and for the past four years has been and now is mentally incompetent; that she is blind and is incompetent to transact ordinary business or to properly care for her property or herself, or to know the legal import of any of her acts; that it is necessary to appoint a guardian for her person and estate; and that one Olaf Bjorke of said county is a fit and competent person to act as such guardian.

The respondent Anna Thoreson appeared and filed answer wherein she admits that she is partly blind, but alleges that she is competent to manage her affairs and that she does not desire to have a guardian appointed. She further sets forth the amount and nature of her property.

A hearing was had at which both sides were represented by counsel. The county court granted the petition and appointed Olaf Bjorke guardian of the person and estate of the respondent.

An appeal was taken by the respondent Anna Thoreson to the district court. A trial anew was had in the district court. Both the petitioner Esther Schwarz, and the respondent Anna Thoreson appeared in person and by counsel. They both testified. Some twelve witnesses, including two physicians, also testified. The district court determined that respondent was not capable of taking care of herself or managing her affairs, and that it was proper and necessary that a guardian be appointed. The trial court filed a memorandum opinion wherein it was said:

"It appears from the record and evidence, that the subject of this petition for guardianship of person and property, Anna Thoreson, will be eighty-one years of age on June 23d, 1941. She was born in Minnesota, and her husband, L. C. Thoreson, who preceded her in death in 1934, was also born in Minnesota. She is one of the early pioneers of North Dakota and filed and made proof upon a government homestead; that she married her husband, L. C. Thoreson, and became the mother of six children, five of whom are now living, and two of whom are the petitioners in this matter. Her daughter, Helen, died on or about July 9th, 1940, to whose estate Anna Thoreson is a sole heir; that at the time of the death of her husband in 1934, Anna Thoreson and her husband, L. C. Thoreson, had theretofore deeded and transferred all their prop-

erty to their children, save and except the life estate in the 704 acres of Texas land. Her surviving daughter, Julia Thoreson, and her deceased daughter, Helen Thoreson, owned jointly the tract of land which had formerly been the old homestead and buildings and home of herself, husband and family, and now the joint property of her daughter Julia, and daughter Helen, now deceased, which deceased daughter's interest now inures to respondent and appellant, Anna Thoreson, as her sole heir. Prior to and since the death of her husband, she had made that location her home for many years, living with Julia and Helen until Helen's death, and since with Julia, at this same location where she now still lives.

"Anna Thoreson, respondent and appellant, is the owner of personal property of an exact undetermined amount. No inventory and appraisement has been made. Since the appointment of Guardian Bjorke, there has come into his hands, according to the proof, $772.91 as 1940 rent from the Texas land, $105.48 as government soil conservation payment, or a total of $878.39 received, against which there has been an expenditure of $11 for the guardian's bond, leaving in the hands of the appointed guardian, Olaf Bjorke, the net sum of $867.39, the property of Anna Thoreson. In addition to this amount she has between one hundred and six hundred dollars cash on hand. There are probably other personal collections to be marshaled. It could be estimated that her present personal estate would be in the neighborhood of $2,000. Upon the probate of her daughter Helen's estate, it is assumed, that she will come into ownership of approximately one quarter section of land, the rents and profits hereafter accruing therefrom, together with the rents from the 704 acres of Texas land. It thus appears that Anna Thoreson has, and has in prospect, a substantial estate, which under the circumstances she must now operate could not be termed an estate easy of management.

"The physical condition of Anna Thoreson is poor, at near eighty-one years of age she is in a state of senility. She is suffering from a heart lesion, arthritis, and other physical ailments. She has had deficient eyesight from childhood, with this malady increasing until now she is totally blind, and has been totally blind for a number of years. She can hardly walk without assistance and must be assisted to a chair

for repose and assisted from her resting place to get on her feet. She cannot write her name; she is unable to see the substance of the matter which she signs by her mark. She knows nothing to which she signs her name except such information as may be communicated to her by others; she is unable to prepare and sign a check as an order for money in a bank deposit or in the government post office. She has been a home builder and her life's attention has been given to the service and comfort of her family. She took no interest in or attempted to transact business or manage property during the life of her husband. It is disclosed that she has no experience in business affairs, or in managing property, either while she had a degree of eyesight or subsequent to the total loss of her sight. Previously her business affairs, if any she had, were managed by her husband and others, and since the husband's death in 1934, the same was managed by Helen and Julia, her daughters.

. . .

"She is affected with that natural mental weakness that comes to the aged. She has entered the state of senility where the mind ceases in correct orientation. She recognizes people only where she has grown familiar with them and their voices by continuous association. She has a marked lapse of recollection or memory of remote past events. She remembers in the present where prompted or has events called to her mind to assist her. She cannot remember the signing of a deed or bill of sale, or document, or contents of such document, a few months previous as an unassisted present recollection. She could not remember the names of her attorneys in the recent past, or the names of the attorney in the case on trial, although it is not disclosed that she had particular opportunity or what she did do with reference to their employment. She had no recollection that an appeal had been taken in the instant case, although the evidence does not disclose what she had to do with it. She realizes that she has a poor memory. She acknowledges and concedes that she must have assistance in order to manage her property. . . .

"The question of fact is: Is Anna Thoreson capable of managing and protecting her property? The answer is: No. Does Anna Thoreson, where she finds herself, surrounded by her quarreling children, apparently more interested in her property than in her personal

comforts, need a personal guardian to protect her, that she may live her few remaining days in peace, which to her is, as she expresses it herself, her most vital concern. . . .

"No person on earth has any interest in the property holdings of Anna Thoreson in praesenti, or in prospect, which is necessary to sustain, maintain and give her adequate peace and comfort in her old and declining years. That is the first charge on every particle of her property. All courts will recognize this and every court will enforce such consideration from any guardian who is appointed over this elderly lady's property.

"Section 8887, Comp. Laws 1913, as amended by chapter 223, Laws of 1927, provides: 'If after a full hearing and examination upon such petition, *it appears to the Court that the person in question is incapable of taking care of himself and managing his affairs,* he must appoint a guardian of his *person and estate* with the powers and duties in this chapter specified. Provided, however, that the court may in its discretion appoint separate guardians *for the person and for the estate* of the incompetent.'

"As a general rule physical incapacity is not a true measure of determination of incompetency to care for and manage property but in case of an elderly person affected with advanced senility and weak memory, in reason it is a circumstance to be brought to the mind of the Chancellor. It is a circumstance of consideration that a weak and faltering mentality finds shelter in a body that can but long resist the storms of life. Schafer v. Haller, 108 Ohio St 322, 140 NE 517, 30 ALR 1378, annotation 1381.

" 'Incompetent' defined: 'The phrase "incompetent," "mentally incompetent," and "incapable" . . . shall be construed to mean any person who, though not insane, is, by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property, and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons.' Kerr's Cyc. Code Civ. Proc. § 1767; 22 Cyc. (Insane Persons) p. 1139; note 81; 25 Am Jur 18, Guardian and Ward, § 18, note 14; Re Reed, 173 Wis 628, 182 NW 329, 17 ALR 1063, annota-

tion 1065 ; Re Daniels, 140 Cal 335, 73 P 1053 ; 22 Cyc. (Incompetent.) p. 68, note 90.''

We have carefully considered the evidence, and are of the mind that the statement of facts made by the trial court is in accord with the weight of the evidence. The trial court determined that a guardian should be appointed for the person and the estate of the respondent, and that the order of the county court which provided for the appointment of a guardian was correct.

The decision of the district court was reached pursuant to a trial anew of the entire proceeding. The district court heard the testimony of the parties and of some twelve witnesses. It saw the respondent, and her daughters, and heard their testimony. While the matter is here for trial anew, and this court is required to review the entire record, "the independent judgment of this court upon the record presented, irrespective of what the trial court may or may not have held, is based only upon a review of the record made in the trial court," and "the judgment of the trial court upon the facts must still have weight and influence with this court, especially when based upon the testimony of witnesses who appeared in person before the court." Christianson v. Farmers' Warehouse Asso. 5 ND 438, 444, 67 NW 300. See also Bingenheimer Mercantile Co. v. Sack, 50 ND 381, 195 NW 969 ; Doyle v. Doyle, 52 ND 380, 202 NW 860 ; A. M. Wilson Co. v. Knowles, 52 ND 886, 204 NW 633 ; First Nat. Bank v. Weiss, 54 ND 883, 211 NW 979 ; Anderson v. Resler, 57 ND 655, 223 NW 707.

We are agreed that the decision of the district court in so far as it affirms the order of the county court for the appointment of a guardian must be affirmed. The district court, however, did not merely affirm the order of the county court, it made certain changes or modifications therein. The order of the county court appointed one Bjorke guardian of the person and estate of the respondent. The district court ordered that two guardians be appointed,—one for the person and another for the estate of the respondent. The district court appointed a person other than Bjorke as guardian for the person of the respondent, and named two persons,—Bjorke, and one other, as fit persons to be guardians of the estate of the respondent, and required the respondent to elect between the two. In so far as the district court sought to appoint a

guardian or guardians, we think it was in error. The county court has exclusive original jurisdiction of the appointment of guardians. ND Const. § 111. In the hearing and determination of an appeal from an order of the county court for the appointment of a guardian, the district court exercises appellate powers only. ND Const. § 103.

The question before the district court was whether the order of the county court for the appointment of a guardian was correct. When it had determined that question, it had performed its functions as an appellate tribunal. Therefore, the decision appealed from must be modified so as to provide merely that the order of the county court be affirmed. As so modified, it is affirmed.

BURR, Ch. J., and MORRIS, BURKE, and NUESSLE, JJ., concur.