In re Guardianship of Mills: Mills, Appellant, vs. Neu-
bert and another, Respondents.

*April 8—May 13, 1947.*

For the appellant there were briefs by *Stanley A. Staidl,* attorney, and *Benton, Bosser, Becker & Parnell* and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Fulton, Mr. Staidl,* and *Mr. Edgar E. Becker.*

*Fred V. Heinemann,* attorney, and *L. Hugo Keller* of counsel, both of Appleton, for the respondents.

BARLOW, J. The trial court found that Annie Mills was in such condition physically and mentally that she was unable to manage her affairs and by reason of her condition was subject to undue influence. On appeal the question is whether the evidence sustains the findings of the trial court.

Annie Mills, appellant, was eighty years of age at the time of the hearing, and was at the home of a daughter, Theda Lathrop. She has four living children: Doris Neubert and Norman J. Mills, respondents, and two other daughters, Bernice Much and Theda Lathrop. Her husband, Henry L. Mills, died April 23, 1926. His estate, consisting mainly of the home farm, was assigned to Fred N. Torrey as trustee charged with the payment of the income to Annie Mills during her lifetime, with the remainder to his children. The trustee duly qualified and has continued to act.

Doris Neubert and her husband have rented the home farm on shares ever since the death of the father. After the death of

her husband appellant visited with her children, but usually maintained her residence on the home farm where certain rooms, by agreement, were set aside for her sole use. For three years prior to March, 1946, appellant lived exclusively with her daughter on the farm. On March 14, 1946, the daughter Theda Lathrop called at the farm and appellant at that time was suffering with a severe cold. She went to the Lathrop home with her daughter, where she was under the care of a doctor for some time. At the time of the hearing she was still weak and was unable to walk without assistance.

Pursuant to an agreement between the trustee and appellant the trustee would pay appellant the sum of $40 per month and retain any additional income and invest it for appellant. In this manner the trustee accumulated $5,000, investing $3,000 thereof in government bonds and depositing $2,000 in a savings account. The trustee would issue a check to appellant each month for the sum of $40 and it would be indorsed by her. Her daughter Mrs. Neubert would cash it and turn the money over to her mother, from which her mother would pay her the sum of $15 for board. After paying other obligations, in addition to the amount which the trustee had invested appellant saved and had in her possession cash which amounted to somewhere between $200 and $500.

While appellant was sick at the home of Mrs. Lathrop some discussion was had between the children about handling the affairs of the mother and the possible appointment of a guardian. Later an attorney, who was known to appellant, was called to the home at her request and he prepared a will. Some of the children were present when the will was prepared. More than a week later the same attorney was again called, at her request, and prepared a power of attorney authorizing the daughter Mrs. Lathrop to handle business matters for her. The power of attorney was recorded in the office of the register of deeds, and all of the children were informed of its execution. After the power of attorney was executed a petition for the appointment of a guardian was filed by two of the children.

The testimony of Mrs. Neubert, the daughter who lived on the home farm and with whom appellant had lived a large portion of the time, in response to the question as to why she made the petition, is as follows, with reference to her mother:

"She wasn't in the best of health and on account of her old age. She never did any business of any kind handling any amount of money. Never invested money or large things or anything like—or anything of that kind."

The son, Norman J. Mills, testified he believed that by reason of his mother's age and health she was unable to take care of her affairs. The only additional reason he could give was that his mother was deaf and he considered she was easily influenced. He seemed to feel that the giving of the power of attorney to the daughter was an evidence of the fact that she was easily influenced.

In opposition to the appointment of a guardian was the testimony of appellant's sister, Mrs. Farmer, who had visited her and said so far as she could see she was apparently normal; that there was nothing wrong with her mind; that she was the same as she had been for years, carried on a conversation and was as competent as she had been at any time to handle her own business if she was physically able to do so. Another witness testified that appellant's mental condition was the same as it had been for the past fourteen years. The doctor who cared for her testified that she was mentally capable of taking care of her own affairs; that he had made an investigation with reference to her mental condition and that she had an excellent memory. During the time she was seriously ill the doctor suggested it would be well to have someone look after her affairs.

The appellant is entitled to live where she chooses and handle her property as she may see fit unless by reason of age or other cause she is mentally incompetent to care for herself or her property and is therefore subject to guardianship. Sec. 319.01 (3) (b), Stats. Liberty of the person and the right to

control her property are very sacred rights which should not be taken away without most urgent reasons. *Guardianship of Reed* (1921), 173 Wis. 628, 632, 182 N. W. 329. In determining whether a guardian of her estate should be appointed the status of the estate and whether its management requires considerable care and judgment should be taken into consideration. *Guardianship of Olson* (1940), 236 Wis. 301, 295 N. W. 24; *Guardianship of Farr* (1919), 169 Wis. 451, 171 N. W. 951.

The term "mentally incompetent" to care for themselves or their property means mental incapacity substantially total. *In re Streiff* (1903), 119 Wis. 566, 97 N. W. 189. Confinement in the home or hospital by reason of a physical ailment where a party is unable to move about to attend to business transactions, unless the ailment is such as to cause the party to be mentally incompetent to care for herself or her property, does not comply with the statutory requirements for the appointment of a guardian. This is an average woman eighty years of age, living in the home of one of her children. She has been careful with her money and has done nothing to indicate she will waste it or dispose of it improvidently. The property she has is the result of her own saving. At all times since the death of her husband she left her savings with the trustee appointed by her husband to handle the trust estate created by him in his will. No one attacks this act on her part. Her physician testified she was mentally competent to handle her business. She had been ill for a short period of time prior to the filing of the petition but was recovering from such illness. The mere execution of a power of attorney does not of itself establish that a person is subject to undue influence. It can be revoked at any time, and the party holding the power of attorney is liable for any misconduct on her part.

The trial court undoubtedly felt that it would be more convenient for the appellant and more satisfactory to the children to have a guardian care for the person and property of this ap-

pellant. This does not comply with the rule that the proof must be clear, convincing, and satisfactory that she is mentally incompetent to care for herself or her property. *Guardianship of Olson, supra.* It is considered the evidence fails to establish that Annie Mills was so mentally incompetent as to be unable to care for herself and her property.

*By the Court.*—Order reversed, and cause remanded with directions that an order be entered vacating and setting aside the order of September 6, 1946, appointing a guardian of the person and estate of appellant.