IN RE GUARDIANSHIP OF COLLITON: COLLITON (Edward J.), by Guardian *ad litem,* Appellant, V. COLLITON (Harriet), Respondent.

*No. 80. Argued January 2, 1969.—Decided February 7, 1969.*
(Also reported in 164 N. W. 2d 480.)

488

For the appellant there was a brief by *Tarrant, Lund & Sherman,* and oral argument by *William A. Mattka,* all of Whitehall.

For the respondent there was a brief by *Fugina, Kostner, Ward, Kostner & Galstad* of Arcadia, and oral argument by *La Vern G. Kostner.*

WILKIE, J. The first issue presented on this appeal is whether in a proceeding to terminate his guardianship as an adjudged incompetent, the person asserting competence has the burden to prove that his condition has changed and that he has returned to a state of mental competence.

Sec. 319.03 of the Wisconsin statutes provides for guardianships of incompetents. Thus it provides:

"All minors, incompetents and spendthrifts are subject to guardianship. The court may appoint a guardian of the person of anyone subject to guardianship who is also a resident of the county, or of a nonresident found in the county, under extraordinary circumstances requiring medical aid or the prevention of harm to his person or property found in the county. The court may appoint a guardian of the estate of anyone subject to guardianship, whether a resident of the state or not, if any of the estate is located within the county. Separate guardians of the person and of the estate of a ward may be appointed."

Sec. 319.01, Stats., defines incompetency as follows:

"(3) 'Incompetent' means a person incapable of managing his property or caring for himself by reason of mental illness, deficiency or infirmity, chronic inebriety, drug addiction or other like incapacity."

Sec. 319.26, Stats., provides for termination of guardianship:

"(1) GUARDIANSHIP OF THE PERSON. A guardianship of the person shall terminate:

"(a)  When a minor ward attains his majority.

"(b)  When a minor ward lawfully marries.

"(c)  When the court adjudicates a former incompetent to be competent.

"(2)  GUARDIANSHIP OF THE ESTATE. A guardianship of the estate shall terminate:

"  . . .

"(c)  When the court adjudicates a former incompetent or a spendthrift to be capable of handling his property. . . ."

In the proceedings for the appointment of guardian, it is clear that the burden of proof rests on the party asserting mental incompetency. In *Guardianship of Olson* [1] this court stated:

"The proof must show that the alleged incompetent is incapable of taking care of himself and managing his property. The mental incompetency must exist at the time of the hearing or else the petition should be denied. To establish mental incompetency in will cases, the proof must be clear, convincing and satisfactory. *Will of Grosse,* 208 Wis. 473, 476, 243 N. W. 465. The degree of proof should be no less, to warrant the appointment of a guardian of the person and estate of an alleged incompetent." [2]

The original proceedings for the appointment of a guardian were held with the alleged incompetent represented by the same attorney as the one who represented him in connection with the termination proceedings. No appeal was taken from the court's judgment of incompetency. The time for appeal passed and the instant termination proceedings were commenced. These are separate and new proceedings in which the previously adjudged incompetent has alleged that he is now competent. Therefore, as the trial court correctly determined, the burden of proof falls upon the ward to establish his

[1] (1940), 236 Wis. 301, 295 N. W. 24.

[2] *Id.* at pages 304, 305. *See Guardianship of Mills* (1947), 250 Wis. 401, 405, 406, 27 N. W. 2d 375.

return to a state of mental competence by the requisite quantum of proof. The trial court stated:

". . . The Court is satisfied that at this time the burden of proof does lie upon the Ward to show proof of competency and this situation, of course, is the reverse at the time of the initial hearing. I am always slow to force a guardianship upon any person and once imposed I feel that the Court should also be equally conservative insofar as the removal of that guardianship is concerned and require that the basic burden of proof be at least met."

Thus the trial court correctly described the essential nature of the termination proceedings and correctly placed the burden of proof with the petitioner who alleged he had returned to competency.

There appears to be some authority for the proposition that the adjudication of incompetency at the guardianship proceeding raises a rebuttable presumption of continued incompetence. In *Roether v. Roether*,[3] wherein this court was concerned with the validity of a marriage contract entered into by the defendant who had been previously adjudged mentally incompetent and placed under guardianship, it was stated that:

". . . The trial judge also stressed the fact that in the guardianship proceedings in 1916 the defendant was found mentally incompetent to manage his estate, and that such a condition having once been shown it was presumed to continue to exist. It is true that a condition once shown to have existed is *prima facie* presumed to exist, *but slight proof to the contrary will rebut the presumption.*"[4] (Emphasis added.)

In that a rebuttable presumption is for the benefit of the party carrying the burden of proof, a presumption of continued incompetence could have application only if

---

[3] (1923), 180 Wis. 24, 191 N. W. 576.

[4] *Id.* at page 28.

the burden of proof rested upon the party relying upon continued incompetence. In holding that the burden of proof in termination proceedings is upon the ward, we must therefore reject the above quoted language from the *Roether Case*.[5] We note that that language was mere dicta because the matter of incompetency for guardianship purposes is entirely apart from competency to marry. There is no presumption of incompetency here. We simply have a new proceeding with the burden of proof upon the party alleging mental competency. We add, however, that the burden upon the ward at the termination proceedings is to establish his competence by the preponderance of the evidence as distinguished from the higher burden at the initial guardianship proceedings requiring proof of mental incompetence by clear and convincing evidence. This court has consistently held to the view that the "liberty of the person and the right to the control of one's own property are very sacred rights which should not be taken away or withheld except for very urgent reasons." [6]

Thus, we reach the second issue on this appeal—whether the trial court's determination of continued incompetency requiring continuation of the guardianship of both the person and estate is against the great weight and clear preponderance of the evidence.

Although the trial court made no specific finding that the incompetence of Mr. Colliton continued and that there was, therefore, need for continuing the guardianship of both his person and the estate, the trial court's order is to that effect and the thrust of his accompanying memorandum opinion is that Colliton failed in his burden of proof to establish competency in either respect.

To show he had returned to competency, Colliton offered only his own testimony and that of a local banker,

---

[5] *Supra,* footnote 3.

[6] *Guardianship of Reed* (1921), 173 Wis. 628, 632, 182 N. W. 329.

C. Andrew Kuhn, and his guardian, Dr. William C. Reichenbach, a veterinarian. Mr. Kuhn had not seen Colliton in 1967 so his judgments could not be probative on the question of Colliton's competence at the time of the proceedings late in that year. Dr. Reichenbach did not testify as to Colliton's mental capacities, whereas two physicians, Dr. Robert E. Yoss and Dr. Kenneth W. Halgrimson did testify in this respect for the opponents to the petitioned termination.

Based on his examination in November, 1966, Dr. Yoss believed that although Mr. Colliton performed at an average level as to memory, mental condition and intellect, he had performed much better in the past so that an average performance represented a decline.

Dr. Yoss was concerned by Mr. Colliton's apparent lack of concern about what could be a very serious physical condition. Mr. Colliton's attitude was one of "I'm fine, nothing is wrong," *i.e.,* he was feeling too good for the circumstances.

Based on the November, 1966, examinations and the reports from Mrs. Colliton, Dr. Yoss felt that it would be wise for Mr. Colliton *not* to make important decisions that would affect his finances and business. Dr. Yoss felt that Mr. Colliton was not functioning normally as far as his behavior was concerned.

In August of 1967 Mr. Colliton returned to the Mayo Clinic for a reevaluation. Tests showed that he was still functioning at an average level with regard to memory, mental condition, and intellect, thus causing Dr. Yoss to conclude that there was not a degenerative brain disease. However, Mr. Colliton's lack of concern had not changed. Dr. Yoss ended his record in August of 1967 as follows:

"I would judge his behavior and judgment are still abnormal even if not organic and still would affect his judgment in business, et cetera. I will suggest psychiatric evaluation."

The psychiatrist, Dr. Kenneth W. Halgrimson, examined Mr. Colliton in August of 1966 and again in March of 1967. It was his conclusion that Mr. Colliton was suffering from a progressive disease of the muscles, similar to the Lou Gehrig or Jacobi-Kirschfeldt disease. Dr. Halgrimson believed that this situation would continue to worsen and he would require years of hospital care.

We conclude that although there is some evidence in the record that Mr. Colliton as of the second hearing had returned to competency insofar as the management of his estate was concerned, the court's determination to the contrary is not against the great weight and clear preponderance of the evidence. Counsel contends that there is no evidence that Mr. Colliton is so infirm in mind or body that he is unable to care for himself and thus there is no need to continue the guardianship over the person.

In *Guardianship of O'Connor,*[7] this court stated:

". . . While the evidence accepted as controlling by the county court sustains the finding that appellant is mentally incapable of managing and protecting his own property, it does not sufficiently show physical infirmities to warrant a conclusion that a guardian of his person is required."

Further the court stated:

". . . Although not capable of handling his business affairs, he appears to be sufficiently in possession of faculties so that no urgent reasons exist for restricting his right of liberty." [8]

The court concluded that "the findings that he is so physically infirm as to be unable to take care of himself is against the great weight and clear preponderance of the evidence . . . ." [9]

---

[7] (1942), 239 Wis. 410, 411, 1 N. W. 2d 873.

[8] *Id.* at pages 411, 412. *See Guardianship of Olson, supra,* footnote 1, at page 304.

[9] *Id.* at page 412.

But the burden of proof was on Colliton to show his competence justifying discontinuation of the guardianship over the person. He failed to meet this burden and accordingly the trial court was entirely correct in continuing the guardianship both over the person and in the management of his estate.

*By the Court.*—Order affirmed.